JUDGE COFER
delivered the opinion oe the court.
April 17, 1872, the appellant executed to W. R. Thompson two notes for $1,750 each, payable, one in twelve months and the other in two years, bearing six per cent interest till maturity, and after that ten per cent until paid, and both negotiable and payable at the "Western Financial Corporation, an incorporated *381 bank in this state. It was stated on the face of each note that it was given in part payment for and secured by lien on real estate that day conveyed by Thompson and wife to Duncan.
The note due in one year was assigned by Thompson to Griswold, and was by him discounted to. the Bank of Mays-ville; the other was discounted by Thompson to the Citizens Bank. Both were protested for non-payment; and Griswold having died, his executrix took up the note discounted by him •to the Bank of Maysville, and brought suit on it in the Louisville Chancery Court to recover judgment against Duncan and Thompson, and to enforce the vendor’s lien retained in the deed from Thompson to Duncan. To that suit the Citizens Bank was made a defendant, and set up in its answer and cross-petition the note held by it, and sought the enforcement of the vendor’s lien and a judgment against Duncan and Thompson.
Duncan answered the original and cross-petition, and denied that either of the banks had legal right or authority to discount the notes, or that either of said notes had, by being so discounted, been placed upon the footing of a foreign bill of exchange. He then went on to allege that Thompson had conveyed the lots for which the notes were given by deed containing a warranty of title; that he (Thompson) had purchased the lots of John T. Morris, and had executed to Morris a note for $1,325 for a part of the purchase money, for which a lien was retained in the deed from Morris to him; that that note was assigned by Morris to Hunt; and that Hunt had brought suit on it since the conveyance to him (Duncan), and that suit was still pending and the lien still existed. He also alleged that at the time of his conveyance from Thompson, and at the time his answer was filed, there was a lien asserted against the property for about $650 for street improvements; that the state and city taxes against the property were unpaid, and the state -and city held a lien on the property for the taxes; and that Thompson was insolvent. He prayed that the note to *382 Morris, the claim for street improvements, and the taxes for 1871 might be credited on the notes.
The suit by Griswold’s executrix was commenced in May, 1873.
In November of. that year the city of Louisville brought a suit in equity against Thompson alone to recover the taxes on the property for the years 1871, 1872, and 1873. By an amended petition the city made Hunt, Duncan, the Citizens Bank, the Bank of Maysville, and Nunz, who had purchased sixty-three feet of the lot conveyed by' Thompson to Duncan under a judgment in favor of Hunt rendered on the note held by him as assignee of Thompson, defendants.
The city again amended its petition and made the executrix of Griswold a defendant, and she and the Citizens Bank answered and set up the notes held by them respectively, and, making their answers cross-petitions against Duncan and Thompson, prayed judgment as in the former suit.
Duncan answered the petition of the city, and stated that “he had no knowledge as to the question involved, except that he assents to and asks for the taxation to be levied upon the whole one hundred feet of ground” conveyed to him by Thompson,” and he assents to the city receiving her fair rate of taxes pro rata upon each foot of the one hundred feet of ground.”
In. answer to the cross-petition of the Citizens Bank, he again set up the note and lien held by Hunt as assignee of Morris, and averred that sixty-three feet out of the one hundred feet had been sold to satisfy that lien, and that the taxes for 1871 and 1872 had not been paid; again reiterated that a lien was asserted for $650 for street improvements, but that no decision had been rendered as to that matter in the suit in which it was asserted, and attempted to plead all of said matters as a set-off against the notes held by the Citizens Bank and Griswold’s executrix.
The court, on final hearing, rendered a personal judgment *383 against Duncan and Thompson, in favor of the Citizens Bank and Griswold’s executrix, and also a judgment to sell the remaining thirty-seven feet of ground not sold under Hunt’s judgment, to satisfy, first, the claim of the city for taxes, and secondly, the debts adjudged to the Citizens Bank and Gris-wold’s executrix.
From that judgment Duncan prosecutes these appeals.
The appeal against the city may be disposed of in a few words. Duncan’s answer was a virtual consent to the decree in favor of the city, and having consented to it he can not reverse it. It is true the court did not render the judgment he desired, but his answer conceded the right of the city to a judgment for the unpaid taxes, and the judgment rendered being correct on the facts presented, can not be reversed at his instance.
The appeal against the bank and Griswold’s executrix presents several questions.
The first and most important is, whether Duncan had a right to set off the amount of Hunt’s judgment, the taxes for 1871 and 1872, and the asserted claim for street improvements.
In regard to the latter item, it is only necessary to say that it is neither alleged nor proved to be an existing and valid demand against the property nor to have been paid by Duncan, and is therefore not a demand that could be set off, even upon the appellant’s theory that the notes are subject to set-offs.
The other items are sufficiently pleaded, and, although appellees’ counsel are correct in saying that they were merely defensive as to the bank and the executrix, and could not be taken for confessed because not denied in a reply, yet we think both are established by the record.
The record of Hunt’s suit is a part of these records. Duncan, the bank, and Griswold were parties to that suit, and the record is evidence for and against each of them, and establishes Hunt’s debt and its payment out of the property conveyed to Duncan.
*384 ' And the same is true of the record of the city’s suit for taxes.
The decision of the case must therefore depend upon the question whether the notes held by the bank and Griswold’s executrix were subject in their hands to these set-offs.
The law of this state places promissory notes negotiable and payable at an incorporated bank, and actually discounted by such a bank, upon the footing of foreign bills of exchange.
The Citizens Bank and the Bank of Maysville are incorporated, and each is authorized to discount notes and bills.
But the appellant contends that the notes in contest were not negotiable — first, because of the great length of time they had to run; and, second, because they showed on their faces that they were given for and secured by lien on real estate.
No authority is cited to sustain the first proposition. The argument is, that banks are created for the public convenience, and not alone for private gain, and that to allow their funds to be invested in paper at long dates defeats the objects of their creation and deprives commerce of the benefits intended; that there must be a limit somewhere, and it should be fixed by the courts at the limit usual in commercial and bank transactions, and that promissory notes not coming within these limits should not be deemed to have been intended to be placed on the footing of foreign bills of exchange.
The legislature, in placing notes payable "at and discounted by incorporated banks upon the footing of bills, has not imposed any such restriction as to time of payment. Bills to which such notes are assimilated have never been so limited, and it would be a great stretch of authority for the courts, upon supposed grounds of public policy, to impose limitations and restrictions where none have been imposed by the legislature.
The notes given by Duncan to Thompson contained all the elements of negotiable paper, and the superadded statement *385 contained in them, that they were given for real estate, and were secured by a lien, gave them neither more nor less scope, nor made them less negotiable than they would have been without that statement, for if it had been omitted the lien would have existed all the same because of the recital of the notes in the deed.
The lien was a mere incident to the debt, and passed by the assignment of the notes. It was a mere collateral security, and neither its existence nor its mention on the face of the notes in any wise affected their negotiability. (Smith’s Mercantile Law, 270; Powell on Mortgages, 908; Daniel on Negotiable Instruments, see. 834.)
It is next contended that, although the notes were negotiable, the lien was not, and that, consequently, although the matters pleaded as a set-off are not available against the notes, they are available against the lien. In other words, that although the holders of the notes took them free from the equities between the maker and payee, and were entitled to judgments in persondm for the full amount, notwithstanding the set-offs, they took the lien subject to those equities, and were only entitled to enforce it for the balance, after deducting the set-offs. This view seems to be sustained by some highly respectable authorities. (Johnson v. Carpenter, 7 Minn. 183; Olds v. Cummings, 31 Ill. 188; Walker v. Dement, 42 Ill. 278.)
On the other hand, it is said in Powell on Mortgages, 908, that if a negotiable note be secured by mortgage, and the mortgagee, after payment of a part of it by the mortgagor, actually negotiates the note for value, the indorsee will be entitled to have his money from the mortgagor; and Mr. Hilliard, in his work on Mortgages (vol. 1, p. 526, sec. 49, a), and Mr. Daniel, in his work on Negotiable Instruments (vol. 1, p. 628, sec. 834), hold the same doctrine on this subject, and it has been repeatedly so held by the Supreme Court of *386 Wisconsin (Reeves v. Scully, Walker’s Ch. 248; Croft v. Bunster, 9 Wisconsin, 503; Cornell v. Hichens, 11 Wisconsin, 353; Fisher v. Otis, 3 Chand. 94; Martineau v. McCollum, 4 Chand. 153), and by the Supreme Court of Michigan in Dutton v. Ives (1 Cooley, 515).
The doctrine in the Minnesota and Illinois courts seems to rest on the ground that a mortgage is not negotiable, and therefore that the indorsee of a note secured by mortgage acquires by the assignment only an equity in the mortgage, and is consequently only entitled to enforce it for what in equity is due from the mortgagor at the time he receives notice of the assignment of the notes. Those courts, however, hold that the indorsee takes the note free from the equities between the original parties, and may, in an action at law, recover the full amount thereof. So far, then, as the mortgagor is concerned, the rule is valueless. He is, in any event, bound to pay the entire debt to the holder of the note, and it can be of little moment to him whether he pays it on a judgment at law or by the enforcement of the mortgage.
The only effect of the rule, then, is to deprive the indorsee of the benefits of the mortgage, not for the benefit of the mortgagor, but for the benefit of third persons as creditors of or purchasers from him; while, on the other hand, if the indorsee takes the mortgage free from the equities between the mortgagor and mortgagee, and that be understood to be the rule of law, the interest of the mortgagor will be subserved by the consequent increase of the value of the note or bill secured by the mortgage; and that which subserves the'interest of the mortgagor will also subserve the interests of commerce and tend to prevent litigation and to suppress fraud.
The doctrine that an assignee can enforce the mortgage for no more than is due as between the mortgagor and mortgagee had its origin at a time when the practice of giving mortgages as collateral security for negotiable paper was unknown, and *387 was made to rest upon the ground that such was the rule in an action at law on the covenant or bond to which the mortgage was collateral, and that the assignee should stand no better in equity than at law. (1 Hilliard on Mortgages, ch. 18, sec. 54; Matthews v. Wallwyn, 4 Vesey, 118.)
The rule thus being “that the parties as to rights and remedies shall stand upon the same footing in both courts, it follows as a logical conclusion that when the nature of the instrument evidencing the debt and the circumstances of the transfer are such that in a suit at law against the mortgagor the assignee can enforce its payment regardless of any equities existing between the mortgagor and mortgagee, he should have the same rights and remedy in equity. The reason of the rule ceasing in the case of negotiable securities transferred before maturity and without notice, the rule also ceases. The debt is the principal thing, the mortgage the incident; the transfer of the debt carries with it the mortgage. It is the debt which gives character to the mortgage, and fixes the rights and remedies of the parties under it, and not the mortgage, which determines the nature of the debt.” (Croft v. Bunster, 9 Wisconsin, 510.)
We are therefore of the opinion that there was no error in the judgment, and it is affirmed.